Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, modifies and affirms the Opinion and Award of the Deputy Commissioner.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act and the employment relationship existed between the parties at all relevant times.
2. American States Insurance was the carrier on the risk.
3. Plaintiff sustained a compensable injury to her back on 26 September 1991, at which time plaintiff's average weekly wage was $295.00, yielding a compensation rate of $196.97.
 ***********
Based upon all of the competent evidence adduced at the hearing, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. On 26 September 1991, plaintiff was employed in the knitting department at Lynne Hosiery Mills. On that date, plaintiff sustained a compensable injury by accident when she was retrieving yarn from a box and experienced pain in her back. Defendants paid compensation pursuant to a Form 21 agreement approved on 11 December 1991.
2. Following her injury, plaintiff experienced low back and left leg pain. She was conservatively treated by Dr. Grymes and Dr. Burke. In November 1991, plaintiff came under the care of David L. Kelly, M.D., a neurosurgeon at Bowman Gray, who diagnosed a non-ruptured bulging disc at L4-5 and osteoarthritis, both of which likely pre-existed the injury. Dr. Kelly recommended conservative treatment, increased activity, and weight loss. He recommended against surgery.
3. On 13 August 1992, plaintiff came under the care of T. Craig Derian, M.D., an orthopaedic surgeon. Dr. Derian saw plaintiff five times between August 1992 and August 1993. He recommended a fusion surgery, which plaintiff declined. On 17 September 1992, Dr. Derian found that plaintiff had reached maximum medical improvement. He released plaintiff to return to work with a restriction that plaintiff refrain from lifting over fifteen pounds on a regular basis, and avoid repetitive bending, lifting or stooping. Plaintiff was also to be allowed frequent position changes from sitting, standing, and walking.
4. Based upon Dr. Derian's recommendations, defendant-employer provided plaintiff with the job of quality control or finishing inspector. This job was a regular, light duty position involving size testing and inspecting finished socks, and was within the restrictions imposed by Dr. Derian.
5. The lifting requirements of plaintiff's job as a quality control/inspector did not require that she lift over one to one and a half pounds, the socks that she worked with were brought to her, and she was able to obtain the board used to inspect the socks without having to bend or stoop. Plaintiff was allowed to sit or stand at her discretion and the job involved little, if any, walking. This position was non-production work, and plaintiff was able to work at her own pace.
6. Plaintiff was physically capable of performing the duties of the quality control/inspecting job. When she returned to work on 9 October 1992, defendant-employer allowed her to work less than full-time hours and agreed to pay her pursuant to a Form 26 supplemental agreement for compensation for her wage differential; however, no medical provider had restricted plaintiff to less than full-time employment.
5. Plaintiff did not seek medical attention for back and leg pain from November 1992 until April 1993, when she advised Dr. Derian that she was unable to work. On 5 March 1993, Charles E. Rawlings, III, M.D., with Forsyth Neurosurgical Associates, found that plaintiff was normal from a neurological standpoint. His findings and observations indicate that plaintiff's complaints of pain were exaggerated.
6. Plaintiff testified that she could not perform the quality control/inspector job with defendant-employer because of back pain, pain and numbness in her legs and feet, swelling in her feet, and shaking. She also contended that her prescription pain medication caused memory dysfunction and that she suffered depression as a result of her injury, both of which she contended were caused by her compensable injury and contributed to her disability. However, these complaints and contentions are not supported by medical evidence and are not accepted as credible.
7. Plaintiff voluntarily terminated her employment with defendant-employer effective 17 June 1993. No physician advised plaintiff that she was physically unable to perform her light duty job or that she should terminate her employment. Dr. Derian had approved the quality control/inspector position with defendant-employer, subject to plaintiff's subjective complaints, which the Full Commission does not find credible. As of no later than 4 March 1993, plaintiff was no longer disabled as a result of the 26 September 1991 injury.
8. Plaintiff did not seek gainful employment after she terminated her job with defendant-employer.
9. On 13 July 1993, on referral from plaintiff's counsel, plaintiff was seen by Adrian Griffin, M.D., for psychiatric evaluation. Dr. Griffin saw plaintiff for a total of thirty minutes, and thereafter administered a computer test which plaintiff performed by herself for forty-five minutes. Dr. Griffin diagnosed plaintiff with depression and anxiety, but she acknowledged that a clinical psychiatrist needs to spend more than thirty minutes with a patient before rendering meaningful opinions concerning diagnosis and disability. Dr. Griffin was not sufficiently familiar with plaintiff's history in order to render competent and credible opinions concerning plaintiff's psychiatric or psychological disability. The Full Commission declines to accept Dr. Griffin's testimony as credible evidence.
 ***********
The foregoing findings of fact and conclusions of law engender the following additional:
 CONCLUSIONS OF LAW
1. A presumption of disability arose with approval of the Form 21 agreement to pay compensation. This presumption of disability continued when plaintiff returned to work for defendant-employer in October 1992, because defendants entered into a Form 26 supplemental agreement for temporary partial disability. However, defendants have successfully rebutted the presumption of continuing disability by proving, by the greater weight of the evidence, that as of 4 March 1993 plaintiff was able to return to work on a full-time basis at the quality control/finishing inspector position, which was suitable employment, and that her decision to terminate that employment was not the result of her injury on 26 September 1991. N.C. Gen. Stat. § 97-29.
2. Plaintiff's voluntary relinquishment of her employment with defendant-employer constitutes an unjustified refusal to accept suitable employment, and such refusal precludes plaintiff from recovering further disability benefits. N.C. Gen. Stat. § 97-32.
3. Plaintiff is not entitled to further disability benefits after 4 March 1993. N.C. Gen. Stat. § 97-29.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiff's claim must be, and hereby is, DENIED.
2. Each side shall bear its own costs.
 S/ ________________________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/ ______________________ J. HOWARD BUNN, JR. COMMISSIONER
S/ ______________________ DIANNE C. SELLERS COMMISSIONER